## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARKADIUSZ JOSEF GASKA and KATARZYNA GASKA, individually and on behalf of a class of others similarly situated,<br><br>   *Plaintiffs*,<br><br>   v.<br><br>DARCARS OF RAILROAD AVENUE, INC.,<br><br>   *Defendant*. | No. 3:22-cv-1201-MPS |

### RULING ON MOTION TO REMAND AND OTHER MOTIONS

Plaintiffs Arkadiusz Josef Gaska and Katarzyna Gaska (collectively "the Gaskas") bring this action against DARCARS of Railroad Avenue, Inc. ("DARCARS") on behalf of themselves and others similarly situated "who purchased a motor vehicle from the defendant . . . and who have either paid a 'commission' that was added on to the sales price of the vehicle, have paid more than the price advertised by DARCARS for the vehicle that they purchased, or both." ECF No. 1 at 13. The Gaskas allege that these sales and advertising practices violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.* DARCARS removed this action to federal court, claiming that I have jurisdiction over the Gaskas' claims under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d). The Gaskas have moved to remand this case to state court, ECF No. 14, or, in the alternative, for leave to conduct jurisdictional discovery to establish whether remand is required, ECF No. 15. DARCARS opposes both motions and has instead moved to compel arbitration and stay this case pending the conclusion of the arbitral process. ECF No. 18. For the reasons set forth below, I grant the Gaskas' motion to remand, deny all other pending motions, and remand this case to state court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the Gaskas' complaint, DARCARS's notice of

removal, and any evidence related to jurisdiction submitted by the parties.[1]

DARCARS is "a Connecticut corporation with a principal place of business in

Connecticut that does business as DARCARS Lexus of Greenwich," ECF No. 1 at 3, and sells

motor vehicles, *id.* at 2. Arkadiusz Josef Gaska and Katarzyna Gaska are both citizens of

Connecticut, *id.* at 3, who together purchased a vehicle from DARCARS and were harmed by

DARCARS's sales and advertising practices, *id.* at 18-19.

The Gaskas allege that DARCARS "has a business practice of adding a commission of

approximately two percent (2%) . . . to the price of new and used vehicles sold on a retail basis."

ECF No. 1 at 14. This commission ("Commission") "is added to the price of each vehicle sold by

DARCARS." *Id.* at 15. Car dealerships do not commonly charge a commission to cover the costs

of paying commissions to employees or to cover other internal costs; instead, these costs are

usually "incorporated into the cash selling prices charged by car dealerships for motor vehicles."

*Id.* By charging the Commission in addition to the advertised price, "DARCARS has a

competitive advantage over other dealerships, because consumers engaged in price comparison

can easily reach the false conclusion that DARCARS vehicles are relatively less expensive

compared to vehicles offered by its competitors." *Id.*

"Retail buyer[s] of vehicles sold by DARCARS do not receive anything of value in return

for the Commission," and buyers pay the Commission "in addition to the cash selling prices of

the vehicles." *Id.* The Commission is also "separate from and in addition to the 'dealer

---

[1] I must consider the complaint and notice of removal when deciding whether to remand a case, and I may also "look to materials outside the pleadings," including "documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

conveyance fee' or 'processing fee'" that DARCARS charges its customers. *Id.* The Commission does not correspond to any "additional service performed or ordered by [DARCARS's] retail buyers." *Id.* at 16.

Separately, the Gaskas also claim that DARCARS sells vehicles for more than the advertised price. *Id.* at 16-17. DARCARS advertises new and used vehicles on several publications and websites. *Id.* at 16. These prices "are competitive in the marketplace" and "consistent with the prices advertised" by competitors. *Id.* at 16-17. But DARCARS "has a business practice of selling vehicles for prices that are higher than those advertised by it." *Id.* at 17. DARCARS implements this business practice by listing on the vehicle purchase order a vehicle price "that is greater than the advertised price." *Id.*

The Gaskas' own transaction illustrates these general allegations. At some point before January 11, 2022, the Gaskas allegedly saw a car advertised by DARCARS "for a cash selling price of $40,838." *Id.* at 18. On January 11, 2022, the Gaskas went to DARCARS and were told that the price of the car was $40,838. *Id.* When the Gaskas purchased the car, however, the vehicle price listed on the vehicle purchase order was $42,238, $1,400 more than the price advertised by DARCARS. *Id.* at 19. DARCARS also charged a commission of 2% on this higher-than-advertised price, which amounted to $844.76 and was charged separately from any conveyance fee. *Id.* After accounting for Connecticut sales tax and other charges that scale based on the vehicle's purchase order price, the Gaskas' actual alleged damages are $2,764.23.[2]

---

[2] DARCARS calculates the Gaskas' actual alleged damages as $2,764.23. ECF No. 1 at 6. In their memorandum in support of remand, the Gaskas calculate their actual damages as $2,244.76, the sum of the $1400 vehicle price increase and the commission charged on their purchase. ECF No. 14-1 at 4. This calculation omits the Gaskas' claim for damages from "the sales tax charged . . . and finance charges incurred on the amounts that they were overcharged." ECF No. 1 at 30. Damages attributable to sales tax and finance charges were included in the Gaskas' arbitration claim; indeed, the actual damages claimed by the Gaskas when initiating arbitration were $2,764.23, which matches DARCARS's damages calculation. *See* ECF No. 1 at 41 (the Gaskas' arbitration statement of claim noting actual damages were $2,764.23, and that the amount attributable to "[s]ales [t]ax on overcharge" is $142.54, calculated "by multiplying the amount overcharged by CT sales tax (6.35%)," the amount attributable to "[f]inance

The Gaskas assert that DARCARS has treated other customers similarly and bring class claims on behalf of two classes. The commission class ("Commission Class") consists of people who "during the period commencing three years prior to the commencement of this action and continuing until such time as there is an order certifying this case as a class action . . . purchased a new or used motor vehicle from DARCARS" and "DARCARS charged them a Commission in addition to the Price of Vehicle as reflected in the Purchase Order." *Id.* at 20. The advertised price class ("Advertised Price Class") consists of people who "during the period commencing three years prior to the commencement of this action and continuing until such time as there is an order certifying this case as a class action . . . purchased a new or used motor vehicle from DARCARS" where "DARCARS had advertised the vehicle on its website or on a third-party website for a specific price (the 'Advertised Price')" and "the Price of Vehicle charged to them as reflected in the Purchase Order was greater than the Advertised Price." *Id.* at 20.

The Gaskas estimate that "the Commission Class consists of more than 1,000 individuals and that the Advertised Price Class consists of more than 100 individuals" based on "DARCARS'[s] business practices, the size of its inventory, and its advertising practices." *Id.* at 21. DARCARS provides a sworn declaration adding that between its opening "in August of 2020 . . . and August 31, 2022, DARCARS has sold 3,862 cars." ECF No. 22-1 ¶¶ 3-4. 1,932 of these cars "were sold to customers with Connecticut residential addresses, and 1,930 were sold to customers with residential addresses in states other than Connecticut." *Id.* ¶ 5. "Of the 1,930 cars that were sold to residents of other states, 1,407 had residential addresses in New York, and 195 had residential addresses in New Jersey." *Id.* ¶ 6.

charge" on the overcharge is "$376.93," calculated by "combining the amount overcharged and sales tax on overcharge ($2,387.30), dividing that amount by the amount financed ($45,929) and multiplying that percentage (5.198%) by the total finance charge ($7,251.64)". I consider both the Gaskas' lower claimed figure and DARCARS's calculated amount when determining the amount in controversy.

The Gaskas claim that DARCARS is liable to them and "the Commission Class for their damages in the amount of the Commission plus the additional sales tax and finance charges attributable to the Commission . . . [and] in the discretion of the Court, for punitive damages and attorney's fees." ECF No. 1 at 24. For the Gaskas and members of the Advertised Price Class, DARCARS is liable for damages "in the amount of the difference between the Advertised Price and the Price of Vehicle as reflected in the Purchase Orders, plus the additional sales tax and finance charges attributable to the amounts that they were overcharged" and, in the court's discretion, punitive damages and attorney's fees. *Id.* at 27. The actual damages claimed by the Gaskas on behalf of themselves and putative class members are "in excess of $15,000." ECF No. 1 at 31. Before filing this lawsuit, the Gaskas sought to arbitrate their individual claims and claimed $10,000 in punitive damages. *See id.* at 38-41.

DARCARS removed this case on September 23, 2022. ECF No. 1. The Gaskas moved for remand on October 18, 2022, arguing that CAFA's amount-in-controversy requirement was not met and that, in the alternative, the local controversy exception to CAFA jurisdiction required me to remand this case. ECF No. 14. I ordered supplemental briefing on a different exception to CAFA jurisdiction, the discretionary exception, on December 21, 2022. ECF No. 25. Both parties filed supplemental briefing on whether the discretionary exception applied to this case on January 11, 2023. ECF Nos. 26, 27.

## II. LEGAL STANDARD

A civil action brought in state court can be removed to federal court only if the action is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). This case was removed under CAFA, which "gives

5

federal courts jurisdiction over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014). CAFA "expanded the jurisdiction of the federal courts to allow class actions originally filed in state courts that conform to [these] particular requirements to be removed to federal district courts." *Greenwich Fin. Services Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010) (internal quotation marks omitted). Congress' "primary objective" in enacting CAFA was "ensuring [f]ederal court consideration of interstate cases of national importance." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (internal quotation marks omitted); *accord Adams v. W. Marine Products, Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020) ("Congress enacted CAFA in 2005 to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multistate or even national class actions in state courts.") (internal quotation marks omitted).

"In CAFA cases, the defendant bears the burden of establishing federal subject matter jurisdiction." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 142 (2d Cir. 2014). The defendant must demonstrate a "reasonable probability" that CAFA's jurisdictional requirements are satisfied. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006). CAFA contains, however, several enumerated exceptions to its grant of jurisdiction, and "once the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions." *Greenwich Fin. Servs.*, 603 F.3d at 26. "In determining whether the CAFA exceptions apply, courts have applied a preponderance of the evidence standard." *Stellato v. Hofstra U.*, CV201999GRBARL, 2022 WL 2222875, at *1 (E.D.N.Y. June 17, 2022). Unlike in other

6

removal contexts, "no antiremoval presumption attends cases invoking CAFA" jurisdiction. *Dart Cherokee*, 574 U.S. at 89.

## III.   DISCUSSION

DARCARS argues that I should decide its "motion to compel arbitration" before I consider the Gaskas' motions to remand and to conduct jurisdictional discovery. ECF No. 23 at 3. But "§ 4 of the FAA does not enlarge federal-court jurisdiction. . . . [A] party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009) (quoting 9 U.S.C. § 4); *see also Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 323 n.1 (2d Cir. 2017) ("The independent jurisdictional basis" for motions to compel arbitration "is generally either federal question or diversity jurisdiction"). I thus must first decide the motion to remand, which, at least in part, concerns my subject-matter jurisdiction over this case, before considering DARCARS's motion to compel arbitration.

The Gaskas argue that I do not have subject-matter jurisdiction to hear this case and so must remand it to state court because DARCARS has "not alleged class damages that can plausibly be alleged to exceed $5 million" as required by CAFA, ECF No. 14-1 at 2, and, alternatively, that the "local-controversy exception to jurisdiction under CAFA" is met in this case, *id.* at 5. I conclude that this case should be remanded under CAFA's discretionary exception because doing so is in the interests of justice.

### A.   Amount in Controversy

The Gaskas first claim that I lack jurisdiction because "[b]ased upon the current record, it is not plausible that actual damages in this case will approach the $5 million threshold." ECF No.

14-1 at 4. CAFA confers original federal jurisdiction over class actions with "an aggregate amount in controversy of at least $5,000,000." *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2)). The aggregate amount in controversy is determined by adding together the value of "the claims of the individual class members . . . exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). "Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it," and so DARCARS "must prove to a reasonable probability . . . that the amount in controversy exceeds $5 million." *Blockbuster, Inc.*, 472 F.3d at 59.

Courts "generally evaluate jurisdictional facts, such as the amount in controversy, on the basis of the pleadings, viewed at the time when defendant files the notice of removal." *Id.* at 56-57 (citation omitted). "[W]hen a defendant's assertion of the amount in controversy is challenged," however, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88 (assuming without deciding that this standard applies to CAFA jurisdiction); *see Egleston v. The Valspar Corp.,* 15CV4130 DLC, 2015 WL 6508329, at *4 (S.D.N.Y. Oct. 13, 2015) (applying this procedure in the CAFA jurisdiction context).[3]

The Gaskas argue that the $5 million threshold cannot be reached in this case because extrapolating their claimed compensatory damages across a class "twice as large as estimated in

---

[3] The Gaskas do not contest that the proposed class in this case is minimally diverse or that the proposed plaintiff classes contain 100 or more members. Nor could they successfully make this challenge, as DARCARS has submitted a sworn declaration attesting that between its opening "in August of 2020 . . . and August 31, 2022, DARCARS has sold 3,862 cars." ECF No. 22-1 ¶¶ 3-4. 1,932 of these cars "were sold to customers with Connecticut residential addresses, and 1,930 were sold to customers with residential addresses in states other than Connecticut." *Id.* ¶ 5. "Of the 1,930 cars that were sold to residents of other states, 1,407 had residential addresses in New York, and 195 had residential addresses in New Jersey." Id. ¶ 6. Because almost 50% of the proposed class have residential addresses in states other than Connecticut, the state of which DARCARS is a citizen, DARCARS has established to a reasonable probability that at least one member of the proposed class of thousands is domiciled in a state other than Connecticut.

the Complaint" would still result in total class damages below $5 million. ECF No. 14-1 at 4 (estimating the class size at approximately 1,100). But as the Gaskas acknowledge, there is no need to estimate the class size because DARCARS knows "the number of individuals in the class and the damages they would receive if this claim were successful." *Id.* In a sworn declaration responding to the Gaskas' motion to remand, DARCARS provides some of this information. It attests that it has sold 3,862 cars during the class period defined by the Gaskas, and so the potential class is over three times larger than the Gaskas estimated. *See* ECF No. 22-1 at 1 (DARCARS sold this number of cars since opening in August of 2020).

Regarding class damages, the Gaskas claim individual damages of at least $2,244.76 in their complaint. *See* ECF No. 1 at 19 ($1,400 in damages from paying more than advertised price, $844.76 in damages from being charged commission). DARCARS calculates the Gaskas' damages to be $2,764.23, which includes damages attributable to tax and financing charges on the Gaskas' increased vehicle sales price. ECF No. 1 at 6. This amount matches the compensatory damages claimed by the Gaskas when they filed their arbitration claim. *Id.* at 41. Extrapolating either of these amounts across a proposed class with 3,862 members produces estimated compensatory damages of more than $5 million before I even consider punitive damages or the value of injunctive relief. *See A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) (injunctive relief can be part of the assessed value of a claim).

And this calculation likely underestimates the proposed classes' compensatory damages because the Gaskas' vehicle purchase price was lower than the average purchase price of vehicles sold by DARCARS during the class period. *See* ECF No. 1 at 19 (the Gaskas' purchase price was $42,238); ECF No. 22-1 ¶ 4 ("average price of a vehicle (without accessories) sold by DARCARS during that time is $44,529.60"). Extrapolating the Gaskas' claimed compensatory

damages across the proposed class, with or without damages attributable to sales tax and financing charges, establishes that CAFA's amount in controversy requirement is satisfied. *See Ramirez v. Oscar De La Renta*, LLC, 16-CV-7855 (RA), 2017 WL 2062960, at *5-7 (S.D.N.Y. May 12, 2017) (extrapolating individual claim across proposed class and finding that CAFA's jurisdictional minimum was met). The Gaskas declined to file a reply challenging the information in DARCARS's affidavit and provided no additional evidence. I thus find that DARCARS has established CAFA's jurisdictional amount by a preponderance of the evidence.

### B.      Local Controversy Exception

The Gaskas also argue that the CAFA local controversy exception applies to this case because "Plaintiffs have little doubt that Defendant's records will show that greater than two-thirds of all class members are citizens of Connecticut." ECF No. 14-1 at 6. The Gaskas bear "the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions [to CAFA jurisdiction]," *Greenwich*, 603 F.3d at 26, also under a "preponderance of the evidence standard", *Stellato*, 2022 WL 2222875, at *1; *accord Camilo v. Lyft, Inc*., 17-CV-9116 (ALC), 2018 WL 8582073, at *2 (S.D.N.Y. Mar. 19, 2018). CAFA's local controversy exception requires me to decline to exercise jurisdiction if two-thirds or more of the proposed class members, and the primary defendant, are citizens of the state where the lawsuit is filed. *See* 28 U.S.C. § 1332(d)(4)(B).

"A Court may infer citizenship for the purposes of evaluating whether the citizenship requirement of a CAFA exception has been met." *Kurovskaya v. Project O.H.R., Inc.*, 251 F. Supp. 3d 699, 703 (S.D.N.Y. 2017); *e.g., Richins v. Hofstra U.*, 908 F. Supp. 2d 358, 363 (E.D.N.Y. 2012) (inferring citizenship from "actual mailing addresses maintained by Defendants" because they are "highly probative of the issue of the citizenship of the Plaintiff

Class"). Here, DARCARS has provided a declaration containing data about its sales, and these data show that just over half of the proposed class members had residential addresses in Connecticut at the time they purchased their vehicles. Residential address data was previously acknowledged by the Gaskas as being sufficient to establish class member citizenship. *See* ECF No. 15-1 at 4-5 (the Gaskas' proposed interrogatories ask for the number of DARCARS customers with residential addresses in Connecticut); ECF No. 15-2 at 3 (the Gaskas arguing that "number of those class members who have their residences in Connecticut" is "necessary" for determining "the applicability of the local controversy exception"). I can thus reasonably infer from this information that fewer than two-thirds of the class are citizens of Connecticut, and thus that the local controversy exception does not apply to this case. *See Adams*, 958 F.3d at 1221 ("At minimum, a person's residence constitutes *some* evidence of domicile."). Because the local controversy exception does not apply, I cannot grant the Gaskas' motion to remand on these bases.

I also deny the Gaskas' motion for jurisdictional discovery. The proposed discovery primarily seeks information that DARCARS disclosed in the affidavit supporting its brief in opposition to the motion to remand. *See* ECF No. 15-1 at 4-5. The remaining proposed discovery questions ask for information about potential damages that is unnecessary to establish CAFA's jurisdictional amount here because that amount can be established by extrapolating the Gaskas' claimed individual damages to the proposed class. *Id.*

## C.    CAFA's Discretionary Exception

CAFA permits me to decline to exercise jurisdiction over certain class actions where "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was

originally filed" if I find that doing so is in the "interests of justice" after "looking at the totality of the circumstances." 28 U.S.C § 1332(d)(3). In considering this exception, I must examine:

> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

*Id.* The Gaskas "need not satisfy all factors"; instead "a balancing test should be applied taking into consideration the totality of the circumstances." *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 359 (E.D.N.Y. 2008) (internal quotation marks omitted). I ordered supplemental briefing on this discretionary exception. ECF No. 25. After reviewing the supplemental briefing, I find that remand is in the interests of justice.

DARCARS first argues that the Gaskas waived any argument related to CAFA's discretionary exception because they did not address it in their initial motion to remand. ECF No. 26 at 2. But "a district court may raise sua sponte an exception to CAFA jurisdiction," including "the discretionary home state exception," because at least some courts have held that CAFA exceptions are "a form of abstention." *Adams*, 958 F.3d at 1223–24; *accord Intl. H. v. Consol. Edison Co. of New York, Inc.*, 22-CV-8705 (VEC), 2023 WL 2898623, at *1 (S.D.N.Y. Apr. 11, 2023) (collecting cases); *see also Naylor v. Case and McGrath, Inc.*, 585 F.2d 557, 563 (2d Cir.

1978) ("Abstention may be raised by the court [s]ua sponte").[4] I raised this exception after the motion to remand was fully briefed. I then provided both parties the opportunity to address this exception, and both parties have now briefed the issue. Waiver is thus not a reason to refrain from remanding here.

As to the discretionary exception's citizenship requirements, DARCARS, the sole defendant, states in the notice of removal that it is "a Connecticut corporation with a principal place of business in Connecticut that does business as DARCARS Lexus of Greenwich." ECF No. 1 at 3. It is thus a citizen of Connecticut. 28 U.S.C. § 1332(c)(1).

DARCARS also does not challenge the discretionary exception's class citizenship requirements in its briefing. Just as I reasonably inferred above that fewer than two thirds of the proposed class members are citizens of Connecticut from DARCARS's declaration showing that just over half of the class members possessed a Connecticut residential address when they purchased their vehicles, I also infer from this information that at least one third of the proposed class consists of Connecticut citizens. Indeed, DARCARS concedes that "[i]t is reasonable here to rely on residential addresses" from its sales data "as a proxy for citizenship." ECF No. 22 at 10; *see id.* at 2 (DARCARS's "sworn declaration attesting that half of putative class members are not Connecticut residents . . . is all that is needed" to determine citizenship for CAFA exception purposes). I find that the residency information provided by DARCARS establishes by a preponderance of the evidence that just over half of the proposed class members are Connecticut citizens. I next consider the six factors guiding the determination of whether remand is in the interests of justice.

---

[4] The Second Circuit has held that the exceptions to CAFA do not address the existence of subject matter jurisdiction, relying on the language in the exceptions instructing the court when to "decline to exercise" jurisdiction. *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141-42 (2d Cir. 2013).

The "national or interstate interest" factor weighs in favor of remand. DARCARS argues that "the subject matter of Plaintiffs' claims—automobile advertising and pricing practices—is one of national interest" because the Federal Trade Commission ("FTC") has proposed a rule addressing "some of the sales practices challenged [by the Gaskas]." ECF No. 26 at 3. The FTC's proposed rule would

> prohibit motor vehicle dealers from making certain misrepresentations in the course of selling, leasing, or arranging financing for motor vehicles, require accurate pricing disclosures in dealers' advertising and sales discussions, require dealers to obtain consumers' express, informed consent for charges, prohibit the sale of any add-on product or service that confers no benefit to the consumer, and require dealers to keep records of advertisements and customer transactions.

Motor Vehicle Dealers Trade Regulation Rule, 87 Fed. Reg. 42012 (July 13, 2022) [hereinafter *FTC Rule*]. It is part of the FTC's "comprehensive approach" to "prevent harm to consumers in the motor vehicle marketplace" and is aimed at preventing a wide variety of unfair trade practices. *Id.* at 42019.

I agree with DARCARS that the FTC's rule, if enacted in the form proposed, would likely apply to the Gaskas' allegations about DARCARS's advertising practices. The FTC's rule would bar "any Motor Vehicle Dealer" from making "any misrepresentation, expressly or by implication regarding . . . the costs or terms of purchasing, financing, or leasing a vehicle." *Id.* at 42045. As part of preventing misrepresentations about vehicle prices, the FTC intends that the rule require "a motor vehicle dealer to disclose the true 'Offering Price' of a vehicle in advertisements that reference specific vehicles or price or financing terms," where the "'Offering Price' of a vehicle means 'the full cash price for which a dealer will sell or finance the motor vehicle to any consumer,' excluding only required government charges." *Id.* at 42022. The Gaskas allege that DARCARS advertises specific vehicles at a price lower than the Offering Price, *see* ECF No. 1 at 16-19, conduct that the FTC intends to prohibit in its proposed rule.

But it is less clear that the FTC's proposed rule would embrace the Gaskas' other allegations that DARCARS has a practice of charging consumers "a Commission in addition to the Price of Vehicle as reflected in the Purchase Order." *Id.* at 20. These claims are brought under the provisions of a Connecticut statute, *id.* at 23, governing the required format of the "[o]rder and invoice" that parties must use to document vehicle sales in Connecticut. *See* Conn. Gen. Stat. § 14-62. This statute prohibits a dealer from including a dealer preparation charge in the selling price for "any item or service not specifically ordered by the buyer and itemized on the invoice." *Id.* § 14-62(b)(2). Though the FTC's rule is concerned with deceptive add-on products and services that "provide no benefit" to the purchaser, the inclusion of an explicit itemized (but not specifically ordered) additional commission charge does not appear to be the kind of add-on the FTC is targeting in its rule. *See FTC Rule* at 42046 (prohibiting add-on products or services "that provide no benefit" and specifying that such add-ons include "[n]itrogen-filled tire related-products or services that contain no more nitrogen than naturally exists in the air" and "[p]roducts or services that do not provide coverage for the vehicle, the consumer, or the transaction, or are duplicative of warranty coverage for the vehicle").

But even if the FTC's proposed rule regulating motor vehicle dealers applies to all the practices identified in the Gaskas' complaint, sales practices by motor vehicle dealers also constitute traditional areas of state law regulation and at least one court in this circuit has held that the national or interstate interest factor in the CAFA discretionary exception is aimed at determining whether a case "can be said to have national importance." *Henry v. Warner Music Group Corp.*, 13 CIV. 5031 PGG, 2014 WL 1224575, at *7 (S.D.N.Y. Mar. 24, 2014) (finding national importance weighed against remand where the challenged practice was "widespread . . . nationwide" and the plaintiff's action had the potential to "radically alter" conditions "in one of

this nation's largest labor markets"); *see also Knowles*, 568 U.S. at 595 (noting that CAFA's primary objective is "ensuring Federal court consideration of interstate cases of national importance") (internal quotation marks omitted). DARCARS has cited no authority for the proposition that a case is of national importance because a federal agency has proposed a rule that would prohibit practices that are already extensively regulated by state law, especially when the proposed rule largely preserves existing state laws. *FTC Rule* at 42047 (stating that the proposed rule "will not be construed as superseding, altering, or affecting any other State statute, regulation, order, or interpretation relating to Motor Vehicle Dealer requirements . . . except to the extent that such [laws are] inconsistent with [the rule], and then only to the extent of the inconsistency" and defining state laws that afford consumers protection greater than that provided by the rule as being not inconsistent with the rule). I am not convinced that this case has national importance merely because the Gaskas challenge under state law sales practices that appear in a proposed federal regulation that also covers many other practices not implicated in this case.

The enforcement of state law against a citizen of the same state is usually not of national importance or interest. *See Weider v. Verizon New York Inc.*, 14-CV-7378 FB JO, 2015 WL 3474102, at *2 (E.D.N.Y. June 2, 2015) ("Plaintiffs' claims—which are governed by New York law—allege that [defendant] assessed the Surcharge in violation of [an order of a New York state agency], the enforcement of which is a matter of local interest."); *Commisso*, 2012 WL 3070217, at *5 ("readily apparent" that complaint alleging violations of state law on behalf of people who worked for company in the same state, when company was citizen of same state, raised "issues . . . local in nature").

DARCARS also argues that this case is of national interest because a ruling on whether CUTPA applies to these sales practices may influence the interpretation of other states' unfair trade practices acts, such that there exists interstate interest in the state laws at issue here. ECF No. 26 at 4. The Gaskas ultimately hope that CUTPA will provide them with a statutory cause of action. *See* ECF No. 27 at 5 (the Gaskas note that whether CUTPA applies to the commission class claims is a matter of first impression). But the Gaskas' CUTPA claims are predicated on violations of Connecticut's statutory and regulatory standards for the advertising and selling of motor vehicles within Connecticut. *See* ECF No. 1 at 22-23 (the Gaskas' commission claims are based on violations of Conn. Gen. Stat. § 14-62, a statute governing motor vehicle sales, and Conn. Agencies Regs. §  42-110b-28, regulations governing motor vehicle advertisements and sales); ECF No. 1 at 26 (the Gaskas' advertising claims are based on violations of Conn. Agencies Regs. § 42-110b-28(b)(1)); *see also Premier Roofing Co., Inc. v. Ins. Co. of N. Amer.*, 1995 WL 107186, at *3 (Conn. Super. J.D. Danbury Mar. 3, 1995) ("Several different statutory violations have been held to supply a sufficient basis for a CUTPA claim.") (citing cases). This case is thus unlikely to involve interpretations of CUTPA that carry significant weight in other states; it is founded specifically on violations of particular Connecticut motor vehicle statutes and regulations that the Gaskas seek to address through the broad statutory cause of action provided by CUTPA.

Ultimately, under the "national or interstate interest" factor "the terms local and national connote whether the interests of justice would be violated by a state court exercising jurisdiction over a large number of out-of-state citizens and applying the laws of other states." *Preston v. Tenet Healthsystem Meml. Med. Ctr., Inc.*, 485 F.3d 804, 822 (5th Cir. 2007). Here, allowing a Connecticut court to apply only Connecticut law to a Connecticut defendant and a class allegedly

harmed by vehicle sales activity that occurred in Connecticut—and where only half the members

of the class are not citizens of Connecticut, squarely in the middle of the citizenship range

Congress authorized in the discretionary exception—does not violate the interests of justice. This

factor thus favors remand.[5]

The "governing law" factor weighs in favor of remand because the Gaskas' claims are all

brought under Connecticut law, *see* ECF No. 1 at 22-30 (asserting only CUTPA claims),

Connecticut is the state in which the action was originally filed, and "reliance on state law for the

principal claim in itself argues for remand," *Speed v. JMA Energy Co., LLC.*, 872 F.3d 1122,

1131 (10th Cir. 2017).

Similarly, the third factor, whether the complaint was pled in a manner that seeks to

avoid federal jurisdiction, weighs in favor of remand. "This factor favors retention in federal

court when the plaintiff has deliberately defined the prospective class or the relief sought in order

to frustrate removal under CAFA." *Id.* at 1133. DARCARS notes that the Gaskas' previous

arbitration demand asserted a Federal Truth in Lending Act ("TILA") claim, which was not

included in their complaint and would have established federal question jurisdiction over this

action. ECF No. 26 at 5-6. If the Gaskas' federal claim was omitted only to avoid federal

jurisdiction, this factor would favor remand. But the Gaskas respond that their TILA claim was

that "DARCARS did not give [them] the written disclosures required by TILA at the time of

purchase," a claim that was "asserted individually" and that the Gaskas had no basis to assert

---

[5] DARCARS additionally argues that there is national interest based on the citizenships of the members of the proposed class. ECF No. 26 at 3. I address this citizenship argument below under the class composition factor. DARCARS also claims that remanding this case would frustrate the "strong federal policy favoring arbitration." ECF No. 26 at 4. But the first discretionary exception factor is about the national or local interest in "the claims asserted" by the plaintiff; it does not ask me to weigh other federal policies that might be implicated by the remand decision. 28 U.S.C. § 1332(d)(3)(A). And, in any event, Connecticut, too, has a "well settled and deferential policy favoring arbitration." *Comprehensive Orthopaedics and Musculoskeletal Care, LLC v. Axtmayer*, 293 Conn. 748, 760 (2009).

"with respect to a class." ECF No. 31 at 1. The Gaskas also note that, even if they had a basis to assert TILA class claims, bringing such claims in this case may have made the class unascertainable because it is likely not "possible to identify [TILA] class members from DARCARS'[s] records," while bringing an individual TILA claim would have weakened the Gaskas' ability to effectively represent the class. *Id.* These arguments adequately address DARCARS's allegation that the Gaskas omitted their TILA claim to avoid federal jurisdiction. It instead appears that the claim was omitted for other reasons.

Also, this factor favors remand when a plaintiff proposes "a natural class—a class that encompasses all of the people and claims that one would expect to include in a class action, or, in other words, if the class definition and claims appear to follow a natural pattern." *Speed,* 872 F.3d at 1133 (internal quotation marks omitted). Here, the Gaskas have not "deliberately defined the prospective class or the relief sought in order to frustrate removal under CAFA"; the proposed class definitions are "natural" in the sense that they include all those who purchased a car from DARCARS and were affected by its allegedly deceptive practices. *Id.* The class is not limited to Connecticut residents. This factor also favors remand.

The fourth "nexus" factor favors remand because the Gaskas brought this action in Connecticut, the forum where the harm allegedly occurred, where DARCARS is incorporated and does business, and where just over half of the class resides. *Oscar De La Renta*, 2017 WL 2062960, at *9 (this factor favors remand when the alleged violations of law occurred in the forum where the suit was filed and where many class members "appear to have resided and where" defendant is headquartered; retaining jurisdiction because there was national interest and insufficient information about the citizenship of the class members).

The "citizenship" factor weakly favors remand. DARCARS disclosed that 1,932 cars were sold to Connecticut residents while 1,930 cars were sold to out-of-state residents. ECF No. 22-1 ¶ 5. 1,407 of these out-of-state residents resided in New York. *Id.* ¶ 6. As discussed above, I infer class member citizenships from the residential addresses disclosed by DARCARS. Thus, approximately 36% of the proposed class are citizens of New York, 50% of the proposed class are citizens of Connecticut, and the remaining 14% of the class are citizens of 35 other states. *See* ECF No. 22-1 ¶ 5-6. DARCARS argues that "while there may be more putative class members from Connecticut than any other state, . . . Connecticut's interest in this case does not clearly predominate over that of other states like New York." ECF No. 26 at 5. DARCARS is correct that the number of potential class members of Connecticut is not overwhelmingly larger than citizens of other states. But slightly more than one half of the proposed class members are Connecticut citizens—a number that is precisely in the middle of the statutory range in which the discretionary exception is applicable—and several courts have granted discretionary remand in cases where the proposed plaintiff class had a composition like the one here. *E.g., Valle v. Pop. Community Bank*, 12 CIV. 9315 LLS, 2013 WL 4017165, at *2 (S.D.N.Y. Aug. 6, 2013) (granting discretionary remand when "roughly 45%" of the class were citizens of the forum state); *Sorrentino*, 588 F. Supp. 2d at 359 (where forum state citizens were 43.6% of the proposed class, the "fifth factor points to remand because there are more citizens in the [forum state] than in any other singular State and the citizenship of the remaining class members is dispersed among several states").

Further, the purpose of this factor is "to ensure that no other State has as significant an interest in the controversy as does [Connecticut]." *Speed*, 872 F.3d at 1136. Given that this case involves only claims brought under Connecticut law, based on harm that occurred in Connecticut

and that was allegedly caused by a Connecticut corporation whose operations are in Connecticut, and Connecticut citizens are the largest group of citizens in the class, I cannot find that any other state has as significant an interest as Connecticut in this case.

DARCARS also argues that the geographic dispersion of the class across 37 states counsels against remand. ECF No. 26 at 5. But "[t]he geographic dispersion of the class plaintiffs should not be overemphasized as a factor favoring federal jurisdiction" because "Congress has authorized the district court[s] to apply the discretionary exception to disputes that are local in character, even if up to 2/3 of the plaintiffs are citizens of other States." *Speed*, 872 F.3d at 1130. And "a broad dispersion of potential plaintiffs among many States actually *favors* remand" because it means that it is unlikely any other state has as significant an interest in the claims at issue as does the forum state. *Id.* at 1130, 1136. The "citizenship" factor thus favors remand, but only weakly because the number of Connecticut citizens in the proposed class, 1,932, is not overwhelmingly larger than the number of members in the next largest citizenship group, 1,407.

Finally, the "related class actions" factor favors remand. This factor is concerned with whether there are "[m]ultiple class action cases purporting to assert the same claims" because these actions "often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity." *Brook v. UnitedHealth Group Inc.*, 06 CV 12954 (GBD), 2007 WL 2827808, at *4 (S.D.N.Y. Sept. 27, 2007) (quoting S. Rep. 109-14, at 42 (2005), when considering the nondiscretionary local controversy exception that contains a similar factor); *Speed*, 873 F.3d at 1137 ("purpose of this factor is efficiency and fairness: to determine whether a matter should be subject to federal jurisdiction so that it can be coordinated with other overlapping or parallel class actions") (internal quotation marks and citation omitted). DARCARS did not identify any related class actions, and the Gaskas claim that there "are no

overlapping or parallel class actions, and no known class actions involving these claims have been filed in the past three years." ECF No. 27 at 10.[6]

Ultimately, the enumerated factors favor remand. It is in the interests of justice to remand this case to state court under 28 U.S.C. § 1332(d)(3).

### D.   Arbitration

Because I find that exercising jurisdiction over this case is not in the interests of justice, I deny DARCARS's motion to compel arbitration and stay this case without prejudice to DARCARS's raising that issue in state court.

## IV.   CONCLUSION

For the reasons above, I grant the motion to remand (ECF No. 14) and deny the motion for leave to conduct discovery (ECF No. 15) and the motions to compel arbitration and stay this action (ECF No. 18).

IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        May 17, 2023

---

[6] The Gaskas note there is one case against an unrelated dealership asserting CUTPA claims involving deceptive fees. ECF No. 27 at 10 (citing *Jackson et al. v. Danbury Fair Dodge LLC,* No. UWYCV226068764S, available at https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV226068764S). I may take judicial notice of litigation in other courts. *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (citation and internal quotations omitted) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings"). The *Jackson* case involves different parties and a different sort of fee that the plaintiffs in that case allege is excessive. It is thus not the kind of similar case contemplated by CAFA's discretionary exception factor because it involves different parties and claims.